UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KRISTOPHER OKWEDY and
KEYWORD MINISTRIES, INC.,

                                        **OPINION & ORDER**

                Plaintiffs,                          00 CV 5426 (NG) (CLP)

    v.

GUY V. MOLINARI, CITY OF NEW YORK,
and PNE MEDIA, LLC,

                Defendants.
-------------------------------------------------------------x
GERSHON, United States District Judge:

      Plaintiffs' Amended Complaint brings claims under 42 U.S.C. § 1983, alleging that the defendants' conduct deprived them of their rights under the First and Fourteenth Amendments to the United States Constitution and also violated the laws of the State of New York. I dismissed plaintiffs' original Complaint in its entirety in a July 18, 2001 Opinion. *See Okwedy v. Molinari*, 150 F.Supp.2d 508 (E.D.N.Y. 2001), *vacated in part by* 333 F.3d 339 (2d Cir. 2003), *and aff'd in part*, 69 Fed.Appx. 482 (2d Cir. 2003). The Court of Appeals vacated the dismissal of plaintiffs' First Amendment Free Speech claim and affirmed the dismissal of all other claims asserted in the original complaint. *Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003); *Okwedy v. Molinari*, 69 Fed.Appx. 482 (2d Cir. 2003). Familiarity with all prior decisions is presumed. After remand, in an Amended Complaint, plaintiffs assert new claims and reassert the dismissed claims, identified as the First and Second "Causes of Action" in the July 18, 2001 Opinion, in order to preserve "the issues for further appeal after final judgment." Amended Complaint at 8-9. At a September 9, 2004 Pre-Motion Conference before me, plaintiffs voluntarily dismissed the Third, Fifth, Seventh and Ninth Causes of Action in the Amended Complaint and dismissed Guy V. Molinari as a defendant.

1

Thus, the remaining claims in the Amended Complaint are: (1) plaintiffs' First Amendment claim that New York City Administrative Code ("NYC Admin. Code") § 8-101 is unconstitutional[1] (the "Fourth Cause of Action" – against defendant City of New York ("the City")); (2) plaintiffs' claim that PNE's actions violated New York Executive Law § 296-5(b) (the "Sixth Cause of Action" – against Defendant PNE Media LLC ("PNE")), and plaintiffs' claim that PNE's actions constituted Breach of Contract (the "Eighth Cause of Action" – against PNE). The City and PNE move for summary judgment or dismissal on all remaining claims against them, pursuant to Fed. R. Civ. Proc. 56. Plaintiffs oppose summary judgment and have moved to amend the Amended Complaint. For the reasons set forth below, defendants' motions are granted and plaintiffs' motion is denied.

*Background*

Unless otherwise indicated, the following facts are undisputed:

Plaintiff Kristopher Okwedy, an ordained minister, is the pastor of Keyword Ministries, "a Christian church dedicated to promoting traditional biblical values, which includes teaching that homosexual behavior is a sin before God." On or about March of 2000, plaintiffs posted billboards in two locations in the borough of Staten Island, New York, which each stated "Thou shall not lie with mankind as with womankind. It is an abomination," and equivalent messages. The messages cited the biblical verse "Leviticus 18:22" as their origin. The billboards being used by plaintiffs were owned and operated by PNE. On the morning of March 8, 2000, at some point between 7:30a.m. and 8:30a.m., PNE arranged for the signs to be removed and ultimately covered them with

---

[1] This claim is distinct from the First Amendment claim that was raised in plaintiffs' original complaint, which was based entirely on Guy Molinari's communications to PNE and the removal of plaintiffs' billboards. The Second Circuit reversed the dismissal of that claim and remanded, but plaintiffs have now voluntarily dismissed that claim because discovery revealed that removal of the billboards began before Molinari communicated with PNE and therefore there is no evidence supporting the original First Amendment claim.

different messages. Later in the day, at approximately 12:00p.m., Guy V. Molinari, then Borough President of Staten Island, sent a letter, via facsimile, to PNE, which stated:

> For the last two days we have attempted to contact your office, without success, at your listed telephone number (908)810-1176.
>
> I write regarding the recent appearance on two of your Staten Island billboards of four translations of Leviticus 18:22. As you are probably aware this particular biblical verse is commonly invoked as a biblical prohibition against homosexuality.
>
> The sponsor for the billboard message is nowhere apparent on the billboard, so I am writing to you with the hope that I can establish a dialogue with both yourself and the sponsor as quickly as possible.
>
> Both you and the sponsor of this message should be aware that many members of the Staten Island community, myself included, find this message unnecessarily confrontational and offensive. As Borough President of Staten Island I want to inform you that this message conveys an atmosphere of intolerance which is not welcome in our Borough.
>
> P.N.E. Media owns a number of billboards on Staten Island and derives substantial economic benefit from them. I call on you as a responsible member of the business community to please contact Daniel L. Master, my legal counsel and Chair of my Anti-Bias Task Force at (718) 816-2056 to discuss further the issues I have raised in this letter.

Also on March 8, 2000, PNE issued a press release announcing that the billboards had been removed.

The publicity surrounding the events described above caused Detective Kevin Czatoryski, of the New York City Police Department ("NYPD") Hate Crimes Task Force, to visit Keyword Ministries at some point in the spring of 2000. Detective Czatorski spoke with plaintiffs and left his card, but the exact date, the nature, and the purpose of the detective's visit are in dispute. This visit and other facts relied upon by plaintiffs are addressed *infra*.

3

*Discussion*

**I.      Summary Judgment Standard**

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the standard for a directed verdict under Rule 50(a), which permits the court to grant a motion for judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury" to decide an essential issue in favor of the non-moving party. Fed.R.Civ.P. 50(a)(1); *see id.* at 323. The burden is on the moving party to demonstrate that there are no material facts genuinely in dispute. See *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To prevail, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *id.* at 587. A motion for summary judgment cannot therefore be defeated by "mere speculation or conjecture." *Giordano v. City of New York*, 274 F.3d 740, 749-50 (2d Cir.2001). In deciding a motion for summary judgment, the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Howley v. Town of Stratford*, 217

F.3d 141, 150-151 (2d Cir.2000).

## II. Constitutionality of New York City Administrative Code § 8-101

Plaintiffs contend that NYC Admin. Code § 8-101 is both facially unconstitutional and unconstitutional as applied to plaintiffs. Specifically, plaintiffs assert that Section 8-101 "imposes an affirmative duty on New York City Government officials to act to eliminate all forms of perceived intolerance toward homosexuality, including peaceful speech," and that Section 8-101 "unconstitutionally prescribes what shall be orthodox in politics . . . religion, or other matters of opinion." Amended Complaint ¶¶ 63, 65 (internal quotation marks omitted).

Section 8-101 is a policy statement and a mandate for the creation of an agency. Other portions of the New York City Human Rights Law proscribe discrimination in public accommodations. The text of Section 8-101 reads as follows:

> In the city of New York, with its great cosmopolitan population, there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on race, color, creed, age, national origin, alienage or citizenship status, gender, sexual orientation, disability, marital status, status as a victim of domestic violence or status as a victim of sex offenses or stalking, whether children are, may be or would be residing with a person or conviction or arrest record. The council hereby finds and declares that prejudice, intolerance, bigotry, and discrimination, bias-related violence or harassment and disorder occasioned thereby threaten the rights and proper privileges of its inhabitants and menace the institutions and foundation of a free democratic state. A city agency is hereby created with power to eliminate and prevent discrimination from playing any role in actions relating to employment, public accommodations, and housing and other real estate, and to take other actions against prejudice, intolerance, bigotry, discrimination and bias-related violence or harassment as herein provided; and the commission established hereunder is hereby given general jurisdiction and power for such purposes.

### A. Facial Challenge

Plaintiffs' facial challenge to NYC Admin. Code § 8-101 cannot survive the motion for summary judgment. In order to prevail on a facial attack of Section 8-101, plaintiffs "must demonstrate that the challenged law either 'could never be applied in a valid manner' or that even though it may be validly applied to plaintiff[s] and others, it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.'" *New York State Club Association v. City of New York*, 487 U.S. 1, 11 (1988). "Invalidating any rule on the basis of its hypothetical application to situations not before the Court is 'strong medicine' to be applied 'sparingly and only as a last resort.'" *Hobbs v. County of Westchester*, 397 F.3d 133, 155 (2d Cir. 2005) (quoting *FCC v. Pacifica Foundation*, 438 U.S. 726, 743 (1978)). Plaintiffs have failed to demonstrate that Section 8-101 is facially unconstitutional under either prong of the standard articulated in *New York State Club Association*. Section 8-101's language, opposing "prejudice, intolerance, bigotry, and discrimination, bias-related violence or harassment and disorder occasioned thereby," expresses the desire of the City to foster an atmosphere of tolerance. The statute does not impose civil or criminal penalties for expression of any viewpoint. Nor does it direct city employees to discriminate against any viewpoint. Rather, it creates a city agency whose purpose is to eliminate discrimination in employment and public accommodations, goals that the City is undoubtedly authorized to pursue under the Constitution. Indeed, the United States Supreme Court rejected a facial challenge to the New York City Human Rights Law almost twenty years ago. *See New York State Club Association*, 487 U.S. at 11-14 (holding that "[t]he facial attack based on the claim that Local Law 63 is invalid in all of its applications must therefore fail" and that the Court could not "conclude that the Law is substantially overbroad and must assume that whatever overbreadth exists should be cured through

case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied."). Thus, plaintiffs' attack on the New York City Human Rights Law may succeed only if they can demonstrate that it is unconstitutional as applied to them.

**B.     As-Applied Challenge**

Plaintiffs' as-applied challenge rests on six alleged "facts." First, plaintiffs cite Molinari's November 8, 2000 letter to PNE, quoted above. Plaintiff's Br. at 13. Second, plaintiffs cite Molinari's failure to initiate discussions with plaintiffs following the covering of plaintiffs' billboard messages. *Id*. at 14. Third, plaintiffs cite the City's response to Plaintiffs' Interrogatory No. 12, "in which the City characterized the Bible verses contained on Plaintiffs' billboards as 'convey[ing] bigoted views of homosexuals.'" *Id*. at 15. Fourth, plaintiffs cite defendants' July 25, 2001 press release which describes the initial dismissal of plaintiffs' suit as a "victory for all Staten Islanders." *Id*. at 16. Fifth, plaintiffs cite the fact that the City kept a number of newspaper articles written about the instant dispute where the word "discrimination" appears in an unknown hand on each of the clippings. *Id.* Sixth, plaintiffs cite "the special trip made by two police officers from the Bias Crimes Unite to Keyword church, ostensibly to speak with Rev. Okewdy but in reality a clumsy attempt to intimidate Plaintiffs from posting any more messages deemed offensive by the City." *Id*. at 17.

In order to challenge the constitutionality of Section 8-101 as it is applied to them, plaintiffs "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). However, "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Id*. (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). Considering all of the evidence in the light most favorable to plaintiffs,

7

plaintiffs identify only two actions that could be construed as manifestations of the policy expressed in Section 8-101: (1) Detective Czatoryski's visit with his partner to Keyword Ministries and (2) Borough President Molinari's communication to PNE regarding plaintiffs' billboards. Plaintiffs' other "facts," described above, presumably are introduced in order to evidence defendants' state of mind with regard to these actions.

However, plaintiffs have failed to produce any evidence supporting their assertion that the state actions in question were taken pursuant to Section 8-101. To begin with, as described above, Section 8-101 neither requires particular conduct or views by citizens, nor imposes any civil or criminal penalties on conduct or views. It is merely a policy statement justifying the creation of an agency empowered to deal with discrimination.[2] Molinari testified at his deposition that he contacted PNE because of public safety concerns stemming from his prior experience with anti-homosexual violence. *See* City's Motion for Summary Judgement Exhibit G, Deposition of Guy Molinari at 9 (hereinafter "Molinari Dep."). He further testified that he was not generally familiar with Section 8-101 at the time of his deposition and that he had not even known of its existence during his tenure as Staten Island Borough President. *See* Molinari Dep. at 20. Detective Czatoryski testified that he was unfamiliar with Section 8-101 and that he did not know what the Public Accommodations Law was. *See* City's Motion for Summary Judgement Exhibit J, Deposition of Kevin Czatoryski at 11 (hereinafter "Czatorski Dep."). He further testified that his visit to Keyword Ministries was not related to Section 8-101. *See* Czatoryski Dep. at 11.

Thus, plaintiffs do not present the typical situation of an as-applied challenge where an

---

[2] The "city agency" created by the New York City Human Rights Law is the New York City Human Rights Commission. *See* Website of the City of New York, available at *http://www.nyc.gov/html/cchr/home.html* (last visited – Oct. 11, 2005).

individual is prosecuted or threatened with prosecution under a statute allegedly in violation of the Constitution. *See*, *e.g.*, *United States v. Rybicki*, 354 F.3d 124, 127 (2d Cir. 2003) (rejecting appellants' as-applied challenge to wire fraud statute under which they were convicted), *cert. denied*, --- U.S. ----, 125 S.Ct. 32 (2004). Rather, plaintiffs have identified state action directed at them and have asserted, without any proof, that this state action was carried out under the auspices of Section 8-101. Plaintiffs cannot defeat summary judgment with "mere speculation" that Borough President Molinari and Detective Czatoryski were attempting to enforce Section 8-101, especially when Section 8-101 has no enforcement mechanism.[3] *See Giordano*, 274 F.3d at 749-50. Plaintiffs have not alleged or offered evidence of any role by the city agency whose creation was mandated by Section 8-101. Nor have plaintiffs produced any testimony or records that support a connection between defendants' actions and Section 8-101. Thus, plaintiffs have failed to demonstrate that there is a material fact in dispute with regard to plaintiffs' remaining claim, and defendants' motion for summary judgment must be granted.

**III.    Motion to Amend**

Plaintiffs' motion for leave to amend the Amended Complaint seeks: (1) to reassert plaintiffs' Establishment Clause claim, with modified facts; (2) to reassert plaintiffs' "Free Speech/Free Exercise/Establishment Clause Hybrid" claim, with modified facts; and (3) to add new facts and a new party, Frank J. Nataro, to plaintiffs' state law claims against PNE. At this stage of litigation, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a).

---

[3] Ultimately, plaintiffs appear to be inappropriately conflating their challenge to Section 8-101 with their Section 1983 Establishment Clause claims, which were dismissed in my July 18, 2001 Opinion. *Okwedy*, 150 F.Supp.2d at 519-521, *affd*. in relevant part, 69 Fed.Appx. 482 (2003).

Nonetheless, "the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metropolitan Life Insurance*, 310 F.3d 84, 101 (2d Cir. 2002). An amendment is futile "if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001).

Here, plaintiffs' first and second proposed amendments, the Establishment Clause claim and the Free Speech/Free Exercise/Establishment Clause Hybrid amendment, have already been dismissed, and the dismissals were affirmed by the Court of Appeals. The only difference between the old claims and the new is that plaintiffs have replaced their allegations about Molinari's communications to PNE with allegations about the acts of City officials publicly condemning the plaintiffs' billboards and labeling plaintiffs' perspective "bigoted" in the course of litigation, as well as allegations about the police visit to Keyword Ministries. These claims could not survive a Rule 12(b)(6) motion to dismiss since they suffer from the same deficiencies as plaintiffs' original allegations. *See Okwedy*, 69 Fed.Appx. at 484 ("Although Molinari's letter indicated he was aware of the biblical source of the quotations on the billboards, the letter did not 'differentiate among sects,' nor did it make 'explicit and deliberate distinctions between different religious organizations.'") (quoting *Hernandez v. Comm'r*, 490 U.S. 680, 695 (1989)) (internal citation omitted). The statements by city officials that plaintiffs wish to use as a basis for the Second Amended Complaint do not even rise to the level of Molinari's broad statement in his letter, denouncing plaintiffs' biblically based message as "intolerant." With regard to the visit by a member of the NYPD hate crimes unit to Keyword Ministries, plaintiffs have alleged only that the officer visited the church, asked questions in a gruff manner, and left a card. Plaintiffs do not identify specific statements or actions on the part of the officer evincing any intent to harass, but

only their subjective feelings about the visit to Keyword Ministries. Accepting plaintiffs' allegations about the nature of the visit, as I must, plaintiffs fail to state a claim under Section 1983 where they allege only that the officers conducted an entirely legal "investigation." Therefore it is clear that the proposed amendments are futile and leave to amend is denied. Because I decline to exercise supplemental jurisdiction, as described below, I deny leave to amend with regard to plaintiffs' state law claims.

IV.     **State Law Claims Against PNE**

As all of plaintiffs' federal claims have been dismissed, the court declines to exercise supplemental jurisdiction over the remaining state law claims against PNE, see 28 U.S.C. § 1367(c)(3), and the claims are dismissed without prejudice.

*Conclusion*

The City's motion for summary judgment is granted. PNE's motion to dismiss is granted. Plaintiffs' motion for leave to amend their complaint is denied.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

**Dated:   Brooklyn, New York**
         **October 12, 2005**